BENEDICKT FISCHER et al., Respondents, *v.* BERTHOLD BLANK, Appellant.

As a general rule the adoption of packages of a peculiar form and color in which to inclose merchandise for sale, without any distinguishing symbol, letter, sign or seal, is not sufficient to constitute a trade-mark, and confers no proprietary right to the exclusive use of the form and color of packages for such goods.

A party, however, may acquire an exclusive right to the use of packages of a fixed shape, style and dimension, with emblems, labels and other devices thereon and a name to represent their contents, although each one of these distinguishing features might separately be used by another.

In an action to restrain defendant from using certain peculiar forms of packages and labels and wrappers of certain colors, which had been adopted by plaintiffs for use in putting up for sale tea of their importation, it was found by the referee that said tea was put up in packages of a peculiar form, with wrappers, some black, some blue, having thereon certain devices, and also labels, some circular in yellow and silver, and some diamond shaped; this tea became known in the market as "Black Package Tea," and was known to Russians as "Russian Caravan Tea," which words appeared in Russian upon the packages; that defendant, after plaintiffs' tea became so known in the market, adopted and used in the sale of tea, not of plaintiffs' importation, wrappers similar in color and with similar labels and devices, with the words "Genuine Russian Tea" in Russian, and put up his tea in packages of similar shape. By the interlocutory judgment it was adjudged that plaintiffs were entitled, as against defendant, to the exclusive use of the style of wrappers adopted by them, of the circular yellow and silver-colored and the diamond-shaped labels, and of the peculiar form of packages, and defendant was restrained from using any imitations thereof, and also from using the words "Black Package Tea" in connection with the sale of tea not of plaintiffs' importation, and directed the destruction of defendant's labels. *Held,* that the judgment was too broad; that plaintiffs had no separate proprietary right to the form of packages, the name "Black Package Tea," the circular and diamond-shaped labels or the Russian words ; but that while there was no single point of resemblance which of itself would authorize equitable relief, and each one of these distinguishing marks might be separately used by defendant, he was not entitled to combine all or a number of them in a single package so arranged as likely to deceive a purchaser of ordinary intelligence, and to produce the false impression that the tea offered for sale therein was plaintiffs' tea, and to this extent plaintiffs were entitled to protection by injunction; also, that so much of the judgment as

directed the destruction of defendant's labels was error, as they might be used for lawful purposes, and so defendant had a property right therein and could only be restrained from an unlawful use thereof.

(Argued April 18, 1893; decided May 2, 1893.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made May 13, 1892, which denied a motion by defendant for a new trial upon exceptions, after the entry of an interlocutory judgment in favor of plaintiffs.

This action was brought to restrain the defendant from an alleged infringement of plaintiffs' wrappers, labels and packages used in the sale of tea, and of their alleged trade name of "Black Package Tea," and for an accounting of profits.

The court found these facts: "Plaintiffs, who were copartners, and engaged in business as wholesale grocers and importers of teas in the city of New York, about February, 1888, applied and used, and have since continuously used, a black wrapper for tea of their selection and importation, with three scenes in white, one of which represented a caravan crossing the desert, the other two being snow scenes. About the same time, they adopted, applied and used, and have since continuously used, upon their packages of tea a certain yellow disk or label and also a certain silver disk or label, bearing the words "Export Qual. 1, Strong," and the Russian words for "Russian Caravan Tea," and also a white diamond-shaped label, inclosed with a rectangular border, and bearing the name of "B. Fischer & Co.," with other printed matter in black on a white ground. That plaintiffs adopted a characteristic style of package, which was formed by means of said black wrapper, and was a parallelopiped, having upon its obverse side the central scene of said wrapper, the other two scenes occupying the smaller sides, and having upon its ends in some instances the yellow and in others the silver disk, and having upon the reverse side said diamond-shaped label. At the time of the selection of said characteristic style of package, the tea became and has since been known and identified

in the market as " Black Package Tea," and there has existed a large and increasing demand for it. That plaintiffs' " Black Package Tea " is of a superior quality, and known to Russians as " Russian Caravan Tea." The court also found that defendant has been and is a wholesale grocer in the city of New York, and some time after plaintiffs placed their " Black Package Tea " on the market, and a demand had been created for it, he made use of, without plaintiffs' knowledge or consent, to inclose tea not of plaintiffs' selection or importation, wrappers in black and blue like plaintiffs', and similar in design and shape to those used by plaintiffs, with yellow and silver disks and label so nearly like those on plaintiffs' that one package might easily be mistaken for the other. The court also found that defendant's tea had been handed out and sold when plaintiffs' " Black Package Tea " was asked for, and that the purchasers of and dealers in defendant's tea are from the same class as those who purchase and deal in plaintiffs'.

By the interlocutory judgment, it was adjudged that plaintiffs were entitled, as against defendant, to the exclusive use of the characteristic form and style of package adopted by them for their tea, and of the wrapper for the same, designed and adopted by them, and to the exclusive use upon packages of tea of the circular yellow and silver labels, and the diamond-shaped label, and also to the exclusive use of the designation " Black Package Tea," and " to the use of a package of such a character and appearance as to symbolize and suggest to the mind of the consumer the designation ' Black Package Tea.' " Defendant was adjudged to have infringed on plaintiffs' rights by using for his tea a package with wrapper, disks and labels similar to those adopted and used by plaintiffs, and he was enjoined from using the same, or from imitating plaintiffs' wrapper, disks and labels, or using any label or wrapper for tea not selected by plaintiffs, which, when used, would give it an appearance substantially the same as that of plaintiffs' tea.

An accounting as to defendant's profits and plaintiffs' damages was ordered, and defendant was also required to produce

before the referee copies of all labels and wrappers now in his possession like those referred to above as having been used by him, and upon such production the referee was directed to cause the same to be destroyed at defendant's expense.

*Charles Goldzier* for appellant. The motion in the court below was authorized by the express provisions of section 1001 of the Code of Civil Procedure. (*Raynor* v. *Raynor*, 94 N. Y. 248; *Dorchester* v. *Dorchester*, 30 N. Y. S. R. 498; *L. & M. T. Co.* v. *Frinzer*, 128 U. S. 184; *Popham* v. *Cole*, 66 N. Y. 69; *Cope* v. *Evans*, L. R. [18 Eq.] 138.) A party can not appropriate an ordinary and useful form of package and fashion of label and exclude others from its use or the use of anything resembling it; to sustain an action restraining such use, there must be an imitation of something that can legally be appropriated as a trade-mark. (*E. M. S. Co.* v. *Troxell*, 89 N. Y. 292; *Adams* v. *Heisel*, 31 Fed. Rep. 279; *P. N. Co.* v. *Rouss*, 40 id. 585.) No person can acquire the exclusive right to the use of any particular color. (*Fleischmann* v. *Starkey*, 25 Fed. Rep. 127; *P. N. Co.* v. *B. N. Co.*, 40 id. 588; *Mumm* v. *Kirk*, Id. 580.) Except as to form and color, there is no similarity between the plaintiffs' and the defendant's packages, and the uncontradicted proof in the case shows no infringement of any trade-mark or of anything which could be adopted as a trade-mark. (*Munro* v. *Smith*, 55 Hun, 419; *E. M. S. Co.* v. *Troxell*, 89 N. Y. 292; *A. M. Co.* v. *Spear*, 2 Sandf. 599; *Caswell* v. *Davis*, 58 N. Y. 223.) The plaintiff is entitled to no relief because the name "Russian Caravan Tea," sought to be protected as part of its trade-mark, is intended to deceive the Russian inhabitants of this country. (*Koehler* v. *Sanders*, 48 Hun, 48; 122 N. Y. 72; *P. M. Co.* v. *P. M. P. Co.*, 135 N. Y. 24.)

*Rowland Cox* for respondents. This a motion for a new trial under section 1001 of the Code of Civil Procedure, upon exceptions contained in a case settled, as provided in section 997. Upon such a motion only questions of law arising upon

the exceptions will be reviewed by this court. (*Raynor* v. *Raynor*, 94 N. Y. 248 ; *Dorchester* v. *Dorchester*, 121 id. 159 ; *Koehler* v. *Saunders*, 122 id. 65 ; *L. M. Co.* v. *T. M. Co.*, 138 U. S. 537.)   This court will not determine whether the plaintiffs have, in the abstract, an exclusive right to use the designation "Black Package Tea."   It will decide only that on the facts of this particular case, in view of his fraudulent purpose, successfully set in motion, this defendant should be restrained from using those words, because he is using them " as an artifice or contrivance to represent his goods " to be plaintiffs' " and to induce the public to so believe." (*Croft* v. *Day*, 7 Beav. 84 ; *McLean* v. *Fleming*, 96 U. S. 245 ; *Thomson* v. *Winchester*, 19 Pick. 214 ; *Perry* v. *Truefit*, 6 Beav. 66 ; *Newmann* v. *Alford*, 51 N. Y. 189 ; *Lever* v. *Goodwin*, 57 L. T. [N. S.] 383 ; *Sawyer* v. *Horn*, 4 Hughes, 239 ; *Robertson* v. *Berry*, 50 Md. 591 ; *Carson* v. *Ury*, 39 Fed. Rep. 777 ; *Avery* v. *Merkle*, 81 Ky. 73 ; *Johnston* v. *Orr-Ewing*, 7 App. Cas. 219 ; *Seixo* v. *Provezende*, L. R. [1 Ch.] 192 ; *Read* v. *Richardson*, 45 L. T. [N. S.] 54.) The court had power to direct the destruction of the labels. (*Prince* v. *Strange*, 2 DeG. & Sm. 652 ; *Emperor* v. *Day*, 2 Giff. 628 ; *Drury* v. *Ewing*, 1 Bond, 554.)   It was argued in the courts below that plaintiffs could have no relief by reason of their use of untruthful and misleading statements as to the character of their tea.   This is untenable. (*P. M. Co.* v. *P. M. P. Co.*, 48 N. Y. S. R. 99 ; *Hennessy* v. *Wheeler*, 69 N. Y. 275 ; *Menerdez* v. *Holt*, 123 U. S. 514 ; *L. M. Co.* v. *T. M. Co.*, 138 id. 537 ; *B. C. Co.* v. *Meyer*, 139 id. 127 ; *Koehler* v. *Saunders*, 122 N. Y. 65.)

MAYNARD, J.   We think the interlocutory judgment recovered in this action is too comprehensive in its scope. Some of its provisions are not authorized by the pleadings, proofs and findings as they must be construed and applied under the rules of law which prevail in this class of cases. The injunction granted restrains defendant from making use of the form of package adopted by plaintiffs, and from using

the name "Black Package Tea" in the sale of tea not selected and put upon the market by plaintiffs. The plaintiffs have no proprietary right to this form of package, and are not entitled to its exclusive use. It is a convenient form in which to inclose merchandise of this character when offered for sale, and all who are engaged in the traffic in the commodity, are free to use it without incurring the risk of liability for an infringement of the plaintiffs' rights. It has been too often reiterated to be now questioned, that under ordinary circumstances the adoption of packages of a peculiar form and color alone, having no distinguishing symbol, letter, sign or seal, is not sufficient to constitute a trade-mark. (Browne on Tr. M. §§ 89, 6, 137; *Moorman* v. *Hoge*, R. Cox, 373; *Harrington* v. *Libby*, Id. 538.) Under this judgment the defendant is debarred from using the oblong form of package described, although it may be entirely plain and destitute of any of the plaintiffs' distinguishing marks and devices, and even if it should be of a different color. Such a trade restriction is not reasonable and cannot be upheld.

So with respect to the term "Black Package Tea," we do not think it is such a distinctive appellation as will entitle the plaintiffs to its exclusive use in their business. It manifestly has reference either to the quality of the article or the color of the package in which it is sold. In either case it cannot be made the subject of individual appropriation. If the adoption of a package of a particular form or color, cannot confer any proprietary right to its use, it is difficult to perceive how the assumption of a name, which is simply descriptive of the color of the package, can be lawfully protected from use by others.

It was held by this court (2d division) in *Koehler* v. *Sanders* (122 N. Y. 73) that there can be no exclusive right to a trademark which represents an idea, nor an exclusive appropriation of that which is descriptive of the articles to which they are attached, or which indicates their ingredients, mode of composition, characteristic qualities, properties, or nature; and that in order to have the right of a trade-mark, it must be

some arbitrary term or figure, not suggestive of the nature of the article to which it is affixed.

The use of such a name in connection with the particular form, style, color, and embellishment of package set out in the complaint and findings, might properly be restrained. Probably it was only to this extent that the injunction was intended to go, but as it stands it enjoins the defendant from using the name generally, and a prohibition so unrestricted is not permissible. The injunction is also too broad in the restraint which it imposes upon the defendant in the use of the circular disks, upon which is printed the quality of the tea, the quantity and price, and the words in Russian, "Genuine Russian Tea," which are similar in form, color and general appearance to the disks used upon plaintiffs' packages, except that the latter have upon them the Russian words for "Russian Caravan Tea." The defendant is prohibited from the use of these disks upon any kind of a package, when the injunction should have been limited to the packages described in the complaint and findings.

There is nothing upon the disks which of itself constitutes a trade-mark. The plaintiffs are compelled to admit, in order to avoid exposure to the imputation of fraud, that the words "Russian Caravan Tea" have become conventionalized, and are now used to denote a particular grade or quality of the article, like the phrase "English Breakfast Tea," and if so, they are not capable of a specific appropriation by them to the exclusion of the rest of the commercial world.

The same objection exists, but with greater force, to the retention of that part of the judgment which absolutely forbids the use of the defendant's diamond-shaped business label, which has upon it only his name, occupation and place of business. There can be no grounds upon which its use by the defendant may be inhibited, except upon the packages described in the complaint. Elsewhere in his business, such labels can be freely and lawfully used.

For the same reasons that part of the judgment which requires both the disks and labels to be destroyed by the

referee, cannot be retained.    As there is a lawful use to which the defendant may put them, he has a property right in them of which he cannot be deprived by their seizure and destruction, without compensation.    It is sufficient for the plaintiffs' purpose if he is restrained from unlawfully using them to their injury.

We cannot review the findings of fact of the trial judge if there is any evidence which legitimately tends to support his conclusions.    After a careful perusal of the testimony in the record, and an inspection of samples of the packages put upon the market by the parties respectively, we are not prepared to say that the evidence is insufficient to sustain any material fact found by the trial court.    The plaintiffs have, we think, acquired an exclusive right to the use of packages of the shape, style and dimensions in which they expose their goods for sale, with the emblems, devices and other distinctive features delineated or impressed upon them, and the name which they have adopted to represent their contents; and there are so many points of resemblance between the defendant's packages as described in the complaint and findings, and those of the plaintiffs', that there is danger that the one may be mistaken for the other, and the proof is and the court has found that such mistakes have occurred in the trade to the detriment of the plaintiffs and to the deception of the public.    Under such circumstances the plaintiffs are subjected to the infliction of a wrong, which authorizes them to invoke some preventive remedy.    It must be admitted that there is no single point of resemblance or imitation, which would of itself be regarded as adequate grounds for the grant of equitable relief.    Form alone would not be sufficient; nor size; nor color; nor the general decoration of the panels; nor disks of the same size and color arranged in the same way; nor a label of the same shape and color attached to the same part, nor the use of the same name to designate the kind or quality of tea.    Each one of these distinguishing features might be separately used and no harm result.    But when all, or a number of them, are combined in a single package, and so

arranged and exhibited, that when they strike the eye of the intending purchaser, possessed of ordinary intelligence and judgment, the false impression is likely to be produced that the goods of the plaintiffs are offered, it is the province of equity to interfere for the protection of the purchasing public as well as of the plaintiffs, and for the suppression of unfair and dishonest competition. The true test we think, is whether the resemblance is such that it is calculated to deceive, and does in fact deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates. (*Franks* v. *Weaver*, 10 Beav. 297; *Amoskeag Man. Co.* v. *Spear*, 2 Sand. S. C. 599; *Colman* v. *Crump*, 70 N. Y. 573; *McLean* v. *Fleming*, 96 U. S. 245; *Lawrence Man. Co.* v. *Tenn. Man. Co.*, 138 id. 537.) No inflexible rule can be laid down. Each case must in a measure be a law unto itself. The authorities bearing upon the general question are numerous and diverse, and a further citation of them would not be profitable.

The judgment must be modified in accordance with the views here expressed, and, as modified, affirmed, without costs to either party in this court.

All concur.

Judgment accordingly.