## CENTAUR CO. v. NEATHERY.

(Circuit Court of Appeals, Fifth Circuit. December 13, 1898.)

### No. 768.

**1. UNFAIR COMPETITION IN TRADE—DECEIVING THE PUBLIC—MANUFACTURERS OF CASTORIA.**

While the right to manufacture Castoria according to Pitcher's patented process or formula, and the right to sell the manufactured article under the name of "Castoria," is free to the world since the expiration of the patent, yet, in placing it upon the market, the new manufacturer must clearly

identify his goods, and not engage in unfair competition, nor do anything which will tend to deceive the public, and induce it to purchase his goods under the belief that they are those it has been accustomed to purchase under the same name.[1]

2. SAME—IMITATION OF LABELS.

Defendant commenced the manufacture and sale of a medicinal preparation under the name of "Castoria," using similar bottles, bearing labels which were an exact reproduction of those that had been used by complainant for 20 years (during which time it had, by advertising and other means, made its product widely known), with the exception of certain signatures, which, while different, were similar in general appearance. *Held*, that such labels clearly evidenced an intention to deceive purchasers, and that complainant was entitled to a preliminary injunction against their use.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

Complainant's bill, filed July 13, 1898, at Paris, Tex., in the clerk's office of the circuit court of the United States for the Eastern district of Texas, shows substantially as follows: (1) That the defendant is a citizen of the state of Texas, and was trading under the name or style of the Phenix Medicine Concern, also under the names of the Castoria Manufacturing Company and Texas Chemical Company. (2) That the plaintiff is a corporation chartered under the laws of the state of New York about the 27th of November, 1877, and ever since has been engaged in manufacturing and selling a vegetable preparation designed and known by the trade mark or name of "Castoria," which has been made to appear on the bottles containing the same, and upon the labels therefor, and the said preparation has become exceedingly well known as a remedy; that, from the beginning of the manufacture and sale of said medicine, the bottles in which complainant put up said preparation have been inclosed in a wrapper at the top of which appeared the word "Castoria," together with certain printed matter on said wrapper, as would more fully appear by a specimen of said wrapper annexed to the bill, marked "Exhibit A, Complainant's Wrapper," which was like the other wrappers used by complainant.

The bill further alleges that the business of manufacturing and selling the said preparation was originally founded by Dr. Samuel Pitcher, who first appropriated and used the word "Castoria" as a trade-mark, to be used in connection with said business, and that the said business, and the good will thereof, and the right to use said trade-mark, as incidental thereto, were derived by complainant by mesne assignments from said Samuel Pitcher, and have been used by complainant exclusively ever since the year 1877; that by means of the care, skill, and fidelity with which complainant had conducted the manufacture of said medicine, the good qualities of the ingredients of which it was composed, and the skill with which it had been compounded by complainant, and, further, by reason of the great amount of money which has been expended by complainant in advertising and placing said preparation before the public, the same had acquired a great reputation throughout the United States, and the demands therefor and the sales thereof have been, and are, very great; that said preparation has become a recognized standard medicine; that it was largely recommended by practicing physicians throughout the United States, and may now be found on sale in nearly all the drug stores in the country; that said preparation has become quite popular with the people of the United States; that the appearance of the packages, through the labels on the bottles, and the wrappers in which the bottles are inclosed, and the legends thereon, have become quite familiar to the public, so that, in buying Castoria, the public rely on the outside appearance of the packages, to wit, the appearance of the packages in which the bottles are inclosed, the legend printed thereon, and the general arrangement of the words and letter-

---

[1] As to unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper & Bros., 30 C. C. A. 376.

## Exhibit A, Complainant's Wrapper.

ing on the bottles; that complainant's preparation is put up in bottles of rectangular shape, with a wrapper about the inside; and that said goods have become well known in the market for more than 15 years past, from the combined features of such packages, consisting of their shape, color, the language of the legend printed on the wrapper, arrangement of lettering and type, size, and general appearance: and that plaintiff's goods are distinguished by such marks, wrappers, and printed legends thereon, and are thereby known to the trade and the public throughout the United States. The bill charges that the defendant well knew the foregoing facts, and all of them, and particularly the association in the minds of the public of the wrappers and labels with complainant's goods, and the long familiarity of the public with the appearance of plaintiff's goods; that defendant had at Dallas and elsewhere put upon the market, and sold, a preparation made by him in imitation of that made and sold by complainant, and put the same up in packages, wrappers, and labels in imitation of those used by complainant, and put said spurious goods on the market, and sold and offered for sale the same, in imitation of complainant's preparation; that the imitation is so close, and of such a character, that any purchaser, in the exercise of ordinary care, would not distinguish such spurious goods from those made and sold by complainant.

Annexed to the bill of complaint were the wrappers charged to have been used by defendant, marked "Exhibits B and C, Defendant's Wrappers,"—one purporting to be put up by the Phenix Medicine Concern, and the other by the Castoria Manufacturing Company. Copies of said wrappers will be found on the following pages.

Complainant charges that the use of said wrappers or labels by said defendant was calculated to deceive, and intended to deceive, and did deceive, the public into believing that they were buying the preparation manufactured and put up by complainant, whereby said defendant sought to, and did, unlawfully secure to his advantage the good will and trade which lawfully belonged to the complainant, and prevented the complainant from reaping the legitimate profits on the sale of its preparation, which lawfully belonged to it, by reason of the facts above set out; that in the size and shape of the bottles containing said medicine sold by defendant, and in the manner in which it is put up, in the lettering and arrangement of the words upon the labels or wrappers used upon said goods, there was an unlawful imitation of complainant's goods, packages, labels, and legends, as would appear by comparison of the label on the genuine article made by complainant and the spurious imitation made and sold by defendant. The bill further alleges that if the defendant continues to make and sell said spurious article, in imitation of plaintiff's preparation, not only will the public be imposed upon, and led to buy the goods of the defendant, when intending to buy the goods of the complainant, but complainant's business would be ruined, and it would suffer irreparable injury, loss, and damage; that the defendant had derived, and was deriving, from its unlawful acts, a large amount of profits, the full amount of which was unknown to complainant, and was depriving complainant of sales to a large amount, which it would otherwise have made of its preparation, and threatens to continue to do so; that the amount in controversy exceeds the sum and value of $2,000, exclusive of interest and costs.

## Exhibit B, Defendant's Wrapper.

The bill then prays for a subpœna to issue, requiring defendant to appear and answer, but not under oath; for a decree for damages and profits; and that the defendant be enjoined preliminarily and provisionally, as well as perpetually, from manufacturing, selling, advertising, offering or exposing for sale, any preparation for assimilating and regulating the stomachs and bowels of infants or children, in or under any package or label containing any word, or combination of words, designs, or legends, liable to create confusion in the minds of the public with the legends, labels, and designs used by complainant, or under any marks, labels, wrappers, or circulars the same, or substantially the same, as those used by defendant, shown by Exhibits B and C, attached to the bill, or in any manner imitating the wrappers, labels, or packages used by complainant upon, about, or in connection with its said preparation, manufactured and sold under the name of Castoria; and that all wrappers, labels, or packages in the possession of defendant, and so made in imitation of complainant's wrappers, labels, and packages, be given up and destroyed, under order of the court.

On the day set for hearing in the court below (the 15th day of July, 1898), the defendant appeared and answered, and, as a preliminary matter, pleaded to the jurisdiction of the court, setting up that he was a resident of the Eastern district of Texas, and was in partnership with one A. F. Reinecke, who lived in the Northern district of Texas, and that said Reinecke was a necessary party to the suit. After the plea to the jurisdiction of the court above mentioned, respondent answered the rule to show cause, in substance as follows: He denies that he manufactured Castoria under the name of Castoria

## Exhibit C, Defendant's Wrapper.

Manufacturing Company, or that he intended so doing, or that he intended using the wrappers under that name. He admitted that he did for a while manufacture medicine under the name of Castoria Manufacturing Company, and did use the wrapper marked "Exhibit B," attached to the complainant's bill, but that said name had been dropped, and was not intended to be used again by him. He admitted that he and A. F. Reinecke had manufactured, and do manufacture, Castoria, under the name of the Phenix Medicine Concern, and did use the wrapper marked "Exhibit C," attached to the complainant's bill, and that all the Castoria manufactured by them under the names of Castoria Manufacturing Company and the Phenix Medicine Concern was manufactured under the circumstances set forth below. He alleges that, prior to the year 1868, Dr. Samuel Pitcher invented or discovered a certain compound of medicine, drugs, etc., made into one medicine, used for assimilating the food and regulating the stomachs and bowels of infants, and, by letters patent issued by the United States, this medicine was patented, on the 12th of May, 1868, and there was attached to the answer a copy of this patent, marked "Exhibit A"; that said Pitcher made and sold said medicine under the name of Castoria, and the same became a generic name by which said medicine was known and designated; that said Pitcher did not register any trade-mark, and, as respondent is informed and believes, did not in any way attempt to secure any trade-mark or trade-name, or acquire any right entitling him to any particular method of putting up his goods, but relied solely on the right secured by the patent; that said Pitcher made statements by advertisements, labels, etc., as to the contents of his medicine and as to the purposes for which it was valuable, and that such statements were made and printed upon various advertisements and wrappers in and about the medicine; that this was done, not with the purpose or intention of acquiring any proprietary interest therein, but simply descriptive of the medicine, and the uses to which it was to be put; that the ornamentation in and about the labels, used within the life of the patent, was similar to the ornamentation used by respondent, but the same was merely as descriptive of the article Castoria; that Pitcher's patent expired in 1885, and thereby the formula composing the same, and the medicine Castoria, became public property, and all citizens acquired the right to use the word "Castoria"; and that he became entitled to use such matter connected therewith as should be descriptive of the article, for the uses and purposes for which it was intended, and of its ingredients, and also to state by whom the same was made. And he charges that all the matters complained of by complainant as infringements of its rights were such matters as were descriptive of the article Castoria, manufactured by Dr. Pitcher, and such things as could be used by any one manufacturing Castoria; that about the 27th day of January, 1898, first under the name of Castoria Manufacturing Company, and afterwards under the name of the Phenix Medicine Concern, the said J. M. Neathery did commence to manufacture the article Castoria; that the same was true Castoria, made and manufactured according to the formula of Dr. Pitcher, as shown in his patent; that it was made from first-class drugs, and had all the powers, properties, and benefits that attach to Castoria as made by Dr. Pitcher; and respondent charges that his manufacture was superior or equal to that manufactured by the Centaur Company. He admitted that J. M. Neathery did adopt the label and wrapper shown in Exhibit B, and also shown in Exhibit C. He denied that in adopting this label it was his intention to deceive the public, or lead them into the belief that said medicine was manufactured by the Centaur Company, or in any way connected with that company; but, on the contrary, the only object or purpose in adopting this label and the writing thereon was to call the attention of the public to the fact that this was Castoria, composed of the same articles as originally made by Dr. Pitcher, and containing the same qualities, properties, and virtues as that made by him, which had become the property of the public; that, so far from endeavoring to deceive the public, respondent, in all his advertising matter, was careful to make it known that said medicine was manufactured by the Phenix Medicine Concern, situated at Dallas, Tex., and this information was fully and completely announced on the labels in which said bottles were placed, a copy of which is shown to the court, in Exhibit C in complainant's bill; that respondent was careful to

instruct all his agents and others handling the medicine to advise all pur-chasers that the medicine was manufactured by the Phenix Medicine Concern, of Dallas, and that it was as good as any other Castoria on the market, his desire and wish being to establish a home trade chiefly in Texas and the Indian Territory for an article manufactured in Texas; that the signature of the Phenix Medicine Concern was placed prominently and conspicuously in numerous places on the label, so that the public might well know that the medicine they were purchasing was manufactured by the Phenix Medicine Concern. He advers that the name "Castoria" was never a trade-mark, and that every attempt on the part of complainant to claim the same is an attempt to perpetuate the monopoly of Dr. Samuel Pitcher and his assignees in the making of Castoria, after the patent has expired; that in 1883 one Cora F. Barnes, claiming to be the owner of the patented article, for the purpose of still holding the monopoly in Castoria, attempted to register the word "Castoria" as a trade-mark, and filed in the patent office at Washington a declaration and facsimile on the 10th of July, by which she attempted to secure trademark rights to the word "Castoria"; but in said application and declaration she especially declared that the essential feature of the trade-mark was Castoria, and annexed a facsimile like that under which complainant claims rights in this case, except that the same contained the facsimile signature of one D. B. Dewey, and in said statement said Cora F. Barnes especially declared that each and everything, together with the arrangement of letters, names, and devices, shown in said facsimile, might be changed in arrangement, abandoned altogether, or omitted altogether, without materially changing the character of the trade-mark, the essential feature of which was the word "Castoria." A copy of said statement or declaration was attached to the answer.

The complainant and respondent, upon the hearing for a temporary injunction, filed several affidavits and letters in support of the bill and answer, respectively. The cause was submitted to the court, and taken under advisement; and on August 29th the court made an order denying the preliminary injunction, from which order the complainant appealed to this court, and filed the following assignments of error: "(1) The bill of complaint and the supporting affidavits showed that the complainant had been continually using the label or wrapper, with its distinctive marks, exclusively for about twenty years; that it had expended about two million dollars in advertising and putting before the public its said preparation in said cases; that it had thereby built up a large and lucrative business; that the defendant had manufactured and put upon the market a preparation of Castoria, in a dress so similar to that used by complainant that it was calculated to deceive the ordinary purchaser, and cause him to buy defendant's goods when intending to buy complainant's; that some purchasers had been so deceived, so that defendant's acts constituted an unfair competition in trade, deceived the public, and unlawfully secured to himself the fruits and profits which justly belonged to complainant by reason of the reputation its medicine had acquired through its skill and fidelity of preparation and energy and expense in advertising its preparation of Castoria. (2) The answer to the rule to show cause why an injunction should not issue failed to show any sufficient reason therefor, because —First, all of said answer setting up the patent for the original preparation and its expiration, and the registration of the trade-mark by Cora F. Barnes, was irrelevant, and constituted no defense, no rights under the patent of trademark being claimed in the bill; second, because all of said answer setting up, as a defense, fraud or deception of the public by complainant, showed no such fraud or attempt at fraud as, in equity, precludes the complainant from relief; third, because so much of said answer as set up that, the patent having expired, the defendant had the right to manufacture and sell Castoria under the same label or dress as was used by complainant during the life of the patent, constituted no defense, as the law is against the legal proposition. (3) On the whole case as made by the bill, answer, and proofs, the complainant was entitled to a preliminary injunction, because the same showed clearly an unfair competition in trade, and an unlawful use by defendant of plaintiff's labels, or an unlawfully close imitation thereof, to defendant's advantage and complainant's injury. Wherefore the said complainant prays that said decree be

91 F.—57

reversed, and that the said circuit court may be directed to enter a decree granting an injunction as prayed for in complainant's bill."

De Edward Greer, for appellant.

Wilkins & Vinson and Head, Dillard & Muse, for appellee.

Before PARDEE, Circuit Judge, and SWAYNE and PARLANGE, District Judges.

SWAYNE, District Judge, after stating the case as above, delivered the opinion of the court.

The error assigned in this case is that the court below erred in denying a preliminary injunction. The record establishes the constant and exclusive use by the complainant of its wrapper for 20 years or more, and the expenditure of a large amount of money in advertising the preparation wrapped in such labels. That respondent's labels were such close imitations of those of complainant that they were calculated to deceive purchasers, and cause them to buy respondent's goods instead of the preparation prepared by complainant, cannot be doubted. Indeed, with a very slight difference, they are exact copies of them. "Exhibit C, Defendant's Wrapper," which the respondent admits, in his answer, he and A. F. Reinecke are now using, under the name of the "Phenix Medicine Concern," when compared with "Exhibit A, Complainant's Wrapper," shows on the front an exact imitation of the latter in every minute detail, except the name in script near the lower part, respondent having substituted the words "The Phenix Medicine Concern, Dallas, Texas," for those of "Chas. H. Fletcher, New York," as used by complainant. With this small and unnoticeable change, the front of the wrappers are enough alike to have been printed from the same form. In size, shading, and form of letters, in arrangement and composition of matter, in punctuation, spacing, size, and general effect, the two are in all other respects identical. The similarity is such that it could not have been the result of accident, and must have been so arranged for a purpose. It is true that the respondent, on another part of his label, substituted the name of the "Phenix Medicine Concern" for that of "Chas. H. Fletcher," used by complainant, in much larger type; but it is also true that he printed it in a script very similar, and took care it was so placed as to be on the back part of the bottle, where it would not be likely to be noticed.

There can no longer be a question that, while the manufacture of "Castoria" is free to all since the expiration of the patent, yet the respondent has no right to dress his goods up in such a manner as to deceive an intending purchaser, and induce him to believe he is buying those of complainant.

In Coats v. Thread Co., 149 U. S. 566, 13 Sup. Ct. 966, Mr. Justice Brown, announcing this doctrine, says:

"Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their inclosing packages, in the extent of their advertising, and in the employment of agents; but they have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals."

Justice Maynard, while announcing the same doctrine in Fischer v. Blank, 138 N. Y. 244, 33 N. E. 1040, very aptly remarks:

"It must be admitted that there is no single point of resemblance or imita-tion which would of itself be regarded as adequate ground for the granting of equitable relief. Form, alone, would not be sufficient, nor size, nor color, nor the general decoration of panels, nor disks of the same size and color, arranged in the same way, nor a label of the same shape and color attached to the same part, nor the use of the same name to designate the kind and quality of tea. But when all or a number of them are combined in a single package, and so arranged and exhibited that, when they strike the eye of the intending purchaser possessed of ordinary intelligence and judgment, a false impression is likely to be produced that the goods of the plaintiff are offered, it is the province of equity to interfere, for the protection of the purchasing public, as well as of the plaintiffs, and for the suppression of unfair and dis-honest competition."

While discussing the same proposition in Nail Co. v. Bennett, 43 Fed. 800, Justice Bradley said:

"Whether this [the bronzing of nails] is a good trade-mark or not, it is the style of goods adopted by the complainant which the defendants have imi-tated for the purpose of deceiving, and have deceived, the public thereby, and induced them to buy their goods as the goods of complainant. This is a fraud,—a substantial charge, which the defendants should be required to answer. Undoubtedly, an unfair and fraudulent competition against the busi-ness of complainant, conducted with the intention on the part of defendant to palm off its goods as plaintiff's, would, in a proper case, constitute grounds of relief."

Inasmuch as the issue raised in such cases is one of fraud, of deceit-ful representation, or perfidious dealing, it is evident that the intent of the defendant, when that is clearly made out, is often illuminative of the question to be decided; and such intent may be, and often is, made out, not from direct testimony, but as clear inference from all the circumstances, even where the defendant protests that his intention was innocent. What degree of similarity must exist to warrant the intervention of the court cannot, in the nature of things, be specifically defined in advance. The general rule is best stated by the supreme court, in the following extract:

"The judge must depend in every case upon the appearance and special characteristics of the entire device; but it is safe to declare as a general rule that exact similitude is not required to constitute an infringement, or to entitle the complainant party to protection. If the form, marks, contents, words, or the special arrangement of the same, or the general appearance of the alleged infringer's device, is such as would be likely to mislead one in the ordinary course of purchasing the goods, and induce him to suppose he is purchasing the genuine article, then the similitude is such as to entitle the injured party to equitable protection. Difficulty frequently arises in deter-mining the question of infringement; but it is clear that exact similitude is not required, as that requirement would always enable the wrongdoer to evade the responsibility for his wrongful acts. The colorable imitation which re-quires a careful inspection to distinguish the spurious trade-mark from the genuine is sufficient to maintain the issue; but a court of equity will not interfere when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other. Where the similarity is sufficient to convey a false impression to the public mind, and is of a char-acter to mislead and deceive the ordinary purchaser in the exercise of ordinary care and caution in such matters, it is sufficient to give the injured party a right to redress."

The same doctrine was affirmed and applied by Justice White in an elaborate and able opinion in Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002. The closing paragraph of the opinion (Manufacturing Co. v. Bent, 163 U. S. 206, 16 Sup. Ct. 1016), is as follows:

"There is no doubt that the marks were imitations of those used by the Singer Company, and were intended to deceive, and were made only seemingly different to afford a plausible pretext for asserting that they were not illegal imitations, although they were so closely imitative as to deceive the public. The defendant therefore must be treated as if he had used the Singer marks. So treating him, however, we should be obliged to allow the use of the name 'Singer,' since that name, as we have already held in the case just decided, fell into the domain of things public, subject to the condition on the one who used it to make an honest disclosure of the source of manufacture."

We think the questions raised by the record in this case have already been properly determined by Judge Kirkpatrick in the case of Centaur Co. v. Kellenberger, in the district of New Jersey (87 Fed. 725), in which he denied the respondent had the right to so dress up his goods, by the use of labels and wrappers that were such imitations of those used by the complainant for about 20 years as were calculated to deceive the ordinary purchaser, and cause him to buy defendant's goods when intending to buy complainant's, and thus carry on an unfair competition in trade, deceive the public, and unlawfully secure to himself the profits belonging to the complainant.

Bearing in mind that the complainant's wrapper was well known to the trade for years before the adoption of that of the defendant, it is impossible, in view of the "accumulated resemblances," to avoid the conclusion that these numerous similarities were not the result of chance, but are chargeable to design, the sole object of which was an intent on the part of defendant to so imitate the complainant's wrapper as to create confusion in the minds of intending purchasers, to palm off his goods as those of complainant, and thereby unfairly acquire the benefit of complainant's efforts to build up and retain the trade. While it is admitted that "the right to manufacture Castoria" according to Pitcher's patented process or formula may be free to the world, also the right to sell the manufactured article by the name "Castoria," yet in putting it upon the market the new manufacturer must clearly identify his goods, and not engage in unfair competition, nor do anything which will tend to deceive the public, and induce it to take his goods under the belief that they are those which it has heretofore been accustomed to purchase under the same name. As the similarity of labels shown by the record has that tendency to deceive, and such similarity is evidently the result of design, we are of opinion that the defendant should be enjoined from the use of the label set out in the bill of complaint, or of any label substantially similar thereto which is calculated to deceive the public. The order of the circuit court refusing a preliminary injunction is reversed, and the cause is remanded, with instructions to grant a preliminary injunction as prayed in the complainant's bill, and otherwise proceed in accordance with the views expressed in this opinion, and as equity and good conscience may require.