ANARGYROS v. EGYPTIAN AMASIS CIGARETTE CO. et al.

(Supreme Court, Appellate Division, First Department. November 9, 1900.)

TRADE-MARKS—INJUNCTION—INFRINGEMENT—EVIDENCE.

Plaintiff had been engaged in the manufacture of cigarettes for some years, and had adopted a box of a different design from any other package then used for cigarettes, and also a device printed on each cigarette, as distinguishing marks for his goods. Shortly prior to the institution of this suit plaintiff's former salesman and foreman had gone into business in competition with plaintiff, and manufactured cigarettes of the same general character and size, which they put up in similar packages, and adopted a label closely resembling plaintiff's label, both packages having colored labels with Egyptian figures in gold letters, and a name in black written across the same,.similar in position and general character; and, though the labels were different in color and the words were different, the general effect was the same. Defendants had also induced persons to purchase their goods by stating that the buyers could substitute them for plaintiff's goods. The individual cigarettes were also stamped with designs similar to those adopted by plaintiff. Held, that the showing was sufficient to authorize the issuance of a temporary injunction restraining defendants from continuing the use of such trade-marks.

Van Brunt, P. J., and Hatch, J., dissenting.

Appeal from special term, New York county.

Action by S. Anargyros against the Egyptian Amasis Cigarette Company and others. From an order denying motion for a temporary injunction, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Moritz B. Phillip, for appellant.
Adolph Freyer, for respondents.

INGRAHAM, J. The plaintiff, a domestic corporation, and its predecessor have been engaged since 1889 in the importation and manufacture of cigarettes in the city of New York. Prior to the year 1891 these cigarettes were manufactured in Egypt, and imported to this country by plaintiff's predecessor, but in 1891 the plaintiff's predecessor commenced the manufacture of these cigarettes in this country. About the year 1889 he adopted a label for his goods, which, with some unimportant changes, has been continued, and the plaintiff's cigarettes had become well known in the trade as "Egyp-

tian Deities." The plaintiff alleges that he adopted also, as a distinguishing mark for his goods, a distinctive box of somewhat peculiar design, that was different from any package or box then or prior to that time used in connection with cigarettes, and he also adopted a device printed upon each cigarette. Prior to January, 1890, the plaintiff's predecessor had in his employ the defendant Aaron S. Sulzberger as a salesman, to sell goods for the plaintiff to retail dealers in the city of New York and elsewhere, and the defendant Karakitsou as foreman of the tobacco leaf department, whose duty it was to prepare the tobacco used in the manufacture of these cigarettes, and these defendants, by reason of their employment, acquired knowledge of the plaintiff's business and customers. It also appears that in the month of April, 1900, these defendants organized the defendant corporation, which at once went into business in competition with the plaintiff; that they manufactured cigarettes of the same general character and size, putting them up in similar packages, prepared in imitation of the plaintiff's packages, and adopted a label which, if not an exact imitation of the plaintiff's label, in its general characteristics closely resembles it. It is true that there is some distinction between the two labels in color, the foundation of the plaintiff's label being a light blue, while that of the defendants' is a light green; but with the exception of this coloring the resemblance is very close,—so close as to carry conviction at once that the adoption of this label by the defendants was for the purpose of simulating as nearly as possible the plaintiff's label, and thus obtaining the advantage of the plaintiff's established trade. The adoption of the form of the package which had been used by the plaintiff,—a colored label with Egyptian figures in gold letters; writing a name across the label, which, while a different name from that written upon the plaintiff's label, is similar in position and general character to that of the plaintiff's; using the words "No. 3 Superfine" across the label as used by the plaintiff; and printing in black letters the words "Egyptian Amasis" across the face of the label, in the same position as the words "Egyptian Deities" were printed across the plaintiff's label,—all tend strongly to show that it was the intention of the defendants to put their goods upon the market in a form that would enable them to dispose of them as the plaintiff's goods, and thus take advantage of the reputation of the plaintiff acquired in the conduct of this business. The likeness is too pronounced, and the points of difference too insignificant, to leave it in doubt as to the object of the defendants. And so, in regard to the device stamped upon each individual cigarette, while somewhat different from that of the plaintiff, its general similarity is striking. This conclusion is confirmed by the proof submitted on behalf of the plaintiff as to conversations had with the individual defendants, inducing persons to purchase these goods upon the express statement that they could substitute them for the plaintiff's goods, and offering them at a less price than that established by the plaintiff.

Upon the affidavits submitted to the court below, I am satisfied that this was a deliberate attempt to devise a package and label which would enable the defendants, with their knowledge of the

plaintiff's trade and customers, to sell their goods as the goods of the plaintiff. What was said by the court of appeals in the case of Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904, applies:

"The similarity between the names employed and the devices used; the identity of the medals represented; and the correspondence of size, color, and general appearance, when combined upon the wrapper of a box,—are so close and striking that an intending purchaser of the plaintiff's goods would be likely to be imposed upon if the matches sold by the defendant in these packages should be offered. While competition is essential to the life of commerce, and is the consumers' main defense against extortion, it should be fair and honest; and the manufacturer who produces an article of recognized excellence in the market, and stamps it with insignia of his industry, integrity, and skill, makes his trade-mark a part of his capital in business, and thus acquires a property right in it, which a court of equity will protect against all forms of commercial piracies."

As was said by the court of appeals in the case of Fischer v. Blank, 138 N. Y. 244, 33 N. E. 1040:

"The true test, we think, is whether the resemblance is such that it is calculated to deceive, and does in fact deceive, the ordinary buyer, making his purchases under the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates."

That these labels are sufficiently close within this rule we think is established, both by an inspection of them and by the evidence, and I cannot but think that these defendants have endeavored to obtain by unfair means a share of the plaintiff's business. This conclusion is based upon the affidavits and proof before the court on this matter. Upon the trial a different state of facts may appear which would justify another result. When the witnesses are subject to cross-examination, and when the court has the benefit of their presence, a much better conclusion as to the reliability of the testimony can be had. We do not wish to conclude the court below on the trial as to the facts, but to hold that upon these affidavits we think the injunction should have been granted.

The order appealed from should be reversed, with $10 costs and disbursements, and an injunction granted restraining the defendants from using the label referred to in the complaint, with $10 costs upon giving an undertaking in $2,500. All concur, except VAN BRUNT, P. J., and HATCH, J., who dissent.