Oakite Products, Inc., Plaintiff, *v*. Louis Boritz and Others, Individually and as Copartners Trading and Doing Business under the Firm Name of Borlab Products, Defendants.

Supreme Court, Special Term, New York County, December 2, 1936.

*Briesen & Schrenk* [*Karl Pohl* of counsel], for the plaintiff.

*Matthew M. Levy*, for the defendants.

Rosenman, J. This is an action to enjoin the defendants from violating the plaintiff's trade-mark, and from engaging in acts of unfair competition.

Plaintiff is a manufacturer of a cleansing compound which it has sold to the public for many years. The compound has been given a distinctive name " Oakite " which has been registered in the United States Patent Office and also in the office of the Secretary of State of New York.

Approximately $4,000,000 has been spent through various advertising channels throughout the United States to popularize the product and trade name. The cleanser is sold in a now familiar white and red package, in size five and one-half inches by three and one-fourth inches by one and one-fourth inches.

The defendants very recently have begun the manufacturing of a cleanser, similar in composition to that of the plaintiff's, to which they have given the name " Borite." This name, too, has been registered in the office of the Secretary of State, but it has not been registered in the United States Patent Office. There has been scant advertising of this product, and it has been sold on a comparatively minute scale.

The defendants, nevertheless, have put its product in packages of the size five and three-fourths inches by three and one-fourth inches by one and one-fourth inches, and have given such packages a set-up in color, arrangement and design which I find are calculated to confuse prospective purchasers by their similarity to the plaintiff's product.

The plaintiff on its application for a temporary injunction has already been granted some relief. On that application the court held that the use by the defendants of its color scheme indicated " a studied imitation " of that of the plaintiff and consequently ordered the cessation of such use by the defendants. I find that the packages adopted by the defendant since such temporary order have the same confusing effect. Since upon this trial the defendants say that they " have no fundamental objections to changing the color scheme of their package if the court deems that necessary," the real controversy arises in the use of the name.

The defendants cannot be enjoined from using its package merely because it is of a size similar to that of the plaintiff's. As was said in Fischer v. Blank (138 N. Y. 244, 249), with respect to the use of a particular size and shape of package containing tea: " It is a convenient form in which to enclose merchandise of this character when offered for sale, and all who are engaged in the traffic in the commodity, are free to use it without incurring the risk of liability for an infringement of the plaintiffs' rights."

However, if the distinctive, non-descriptive name, in connection with the use of the package, bears such a resemblance to that of the plaintiff's, or its general appearance is so similar " that it is calculated to deceive, and does in fact deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates " (Fischer v. Blank, supra, p. 252), or " If the false is only colorably different from the true; if the resemblance is such as to deceive a

purchaser of ordinary caution; or if it is calculated to deceive the careless and unwary; and thus to injure the sale of the goods of the proprietor of the trade-mark, the injured party is entitled to relief." (*Colman* v. *Crump*, 70 N. Y. 573, 578.)

The true test of infringement does not depend upon whether a purchaser will be confused or misled when the packages of the commodity in question are laid side by side for visual comparison, or whether by such comparison the fronts or the sides of the package, or the name or type of lettering, by such singling out process are found to be the same or different. " Whether there is an infringement of a trade-mark does not depend upon the use of identical words, nor on the question as to whether they are so similar that a person looking at one would be deceived into the belief that it was the other; but it is sufficient if one adopts a trade name or a trademark so like another in form, spelling, or sound that one, with a not very definite or clear recollection as to the real trade-mark, is likely to become confused or misled." (*Northam Warren Corp.* v. *Universal Cosmetic Co.*, 18 F. [2d] 774, 775.) Defendants' package was a unit. That unit was made up of many elements: the name " Borite," the shape and size of the package and the design and color thereof. That the package was designed as a whole in a deliberate attempt to simulate that of plaintiff cannot be doubted. The defendants cannot assert that although they may have unfairly copied plaintiff's package, their adoption of the name " Borite " was in good faith. These intents may not be separated, so that one be held good and the other not. Each depends on the other, and may not be considered independently. They make up together only one intent — unduly to imitate for the purpose of deception. Consequently the one cannot be protected by this court and the other be held invalid. Protection must be denied to both as a unit.

These packages are sold for a comparatively small amount of money. They do not require the outlay of large sums, which logically makes the purchaser more discriminating in the choice of product and more careful in examination of the goods sold to him.

The defendants claim the right to use the name " Borite " because it is derived from their family name merely by eliminating the last letter of such name, " z " and substituting the letter " e." There is no adequate explanation, however, as to why they adopted such name for their cleanser. They had manufactured other chemical compounds under the firm name of " Borlab Products " and had called such products " Very Best," " Kleen-Wite," " Cadet," " Glo-Brite," and others. Obviously, therefore, the adoption of the name " Borite " for a compound similar to that of plaintiff's

was for the purpose of confusing it, in the mind of the purchasers, with the name of plaintiff's product, "Oakite." Even the use of one's own family name will be enjoined if an improper use is made thereof. (*Westphal* v. *Westphal's World's Best Corp.*, 216 App. Div. 53; affd., 243 N. Y. 639.)

The defendants likewise contend that the only similarity in the names is the ending, "ite;" that the first syllables not only begin with different letters — one with a consonant, the other with a vowel — but that the "o's" following the first letters are pronounced differently; viz., in "Borite," the "Bo" is pronounced phonetically as though written as "Baw," so that entirely, it is pronounced "Bawrite," whereas the "Oak" of "Oakite" is pronounced as though the "Oa" were just one long "o;" Ō-kite. But this distinction is hardly tenable. It is just as probable that "Borite" be pronounced as though written with a long "o" — Bō rite — as written Bawrite. This is particularly so since the defendants claim a phonetic relationship between "borite" and "boring through."

Without mentioning each by name, all of the cases cited by defendants in which injunctions were denied may be distinguished on the basis of the special circumstances existing in those cases.

Although not a precedent, very pertinent and persuasive is the opinion of the Court of Customs and Patent Appeals in the case of *Buckeye Soda Co.* v. *Oakite Products, Inc.* (the plaintiff in this case) (reported in 56 F. [2d] 462). There this plaintiff sought to have the trade-mark "Novite" of the Buckeye Soda Company canceled as "likely to cause confusion or mistake in the mind of the public or to deceive purchasers." At pages 463 and 464 the court said: "It is true, as argued by counsel for appellant, that the marks are not identical, but differ, to some extent, both in sound and in appearance. However, they do closely resemble one another. The goods of the parties are common and widely used household articles, and are sold to the same class of people. Nevertheless, appellant, with knowledge of the value and popularity of the old and established trade-mark of appellee, selected a trade-mark closely simulating it.

"We have held on several occasions that the general purpose of the law of trade-marks is to 'prevent one person from passing off his goods or his business as the goods or business of another;' and that the purchasing public ought not to be required to dissect trade-marks in order to prevent confusion and deception. Considering the character of the goods of the parties, the places where, and the people to whom, they are sold, we think that the involved trade-marks considered as a whole, so nearly resemble one another that the use by appellant of its mark, concurrently with the use

by appellee of its mark, would be likely to cause confusion and mistake in the mind of the public and would result in damage to appellee.

" Appellee, of course, is not entitled to a monopoly of the suffix ' ite.' However, as we said in substance in the case of *Celotex Co.* v. *Chicago Panelstone Company* (49 F. [2d], 1051), when appellant, a newcomer in the field, adopts and uses a mark having the suffix ' ite ' and a prefix not sufficiently dissimilar to the prefix of the appellee's mark to prevent confusing similarity of the marks as a whole, appellee is entitled to the relief intended to be afforded by the statute."

The conclusion herein reached is arrived at without consideration of the testimony given by retail sellers of the products over defendants' objection with respect to the effect of the sale of these packages upon the casual buyer. I am of opinion that such evidence is incompetent since it seeks to establish by expert opinion a fact which the trier of the facts must decide and which is not of so technical a nature as to require the help of experts.

Judgment for plaintiff. Findings of fact and conclusions of law passed upon. Settle decision and judgment.