DOROTHY GRAY SALONS, Plaintiff, *v.* MILLS SALES CO. OF NEW YORK, INC., Defendant.

Supreme Court, Special Term, New York County, April 23, 1937.

*Briesen & Schrenk* [ *Karl Pohl* of counsel], for the plaintiff.

*Nathan Gross,* for the defendant.

SHIENTAG, J. This is an application for an injunction *pendente lite* in an action for trade-mark infringement and unfair competition.

As the affidavits show, the plaintiff at considerable cost has established and built up an extensive business in the manufacture and sale of a high-grade and popular line of toilet preparations which it sells under its trade-mark Dorothy Gray. It also operates a number of beauty salons known as Dorothy Gray Salons.

This business was founded prior to 1916 by Miss Dorothy Gray. In 1927 the plaintiff purchased the business for a large sum of money as a going concern and, together therewith, acquired from Miss Dorothy Gray the right to the exclusive use of the name Dorothy Gray, her secret formulas and processes, customers' lists and good will. Plaintiff has since conducted this business in substantially the same manner in which it had been conducted previously by Miss Gray.

In addition to its large original investment, plaintiff has spent in excess of $2,500,000 in advertising its Dorothy Gray products and services. The sales of Dorothy Gray products in the last ten years have been in excess of $12,000,000, representing many millions of packages of Dorothy Gray preparations.

Among the " couple of hundred different items " of merchandise which the defendant sells is a line of toilet preparations which it purveys under the title " Dorothy Jay Beauty Institute." It is charged and not denied that there is no such " beauty institute." That in itself is a fraud. Here the two products are competitive and the defendant's desire to trade upon the plaintiff company's good will and business reputation — an evil all too prevalent in this era of national advertising — is clear. Various justifications, however, are attempted.

The president of the defendant corporation, whose affidavit is submitted in opposition to the motion, is named David Jacoby. He says Dorothy Jay is a " modification " or " variation " of the name David Jacoby, made up to fit a line of toilet preparations for

women. In one place Mr. Jacoby goes so far as to say that " My use of the expression ' Dorothy Jay Beauty Institute ' is merely the use of my own name." This contention is so naive that it may be dismissed without comment. The reason for the selection is not hard to find when one compares Dorothy Gray with Dorothy Jay. (See Handler and Pickett, Trade-Marks and Trade Names, [1930] 30 Col. Law Rev. 168, 196.) The latter is so plainly a colorable imitation of plaintiff's nationally advertised trade-mark Dorothy Gray that the intent with and the purpose for which it was adopted are clear. The intent was to prey on plaintiff's business, and the purpose to confuse and deceive customers into the erroneous belief that the Dorothy Jay toilet preparations are Dorothy Gray toilet preparations, and to profit from the resulting confusion.

The defendant says he uses Dorothy Jay in such a manner that confusion is unlikely. This contention is based on the fact that the packages are different and that, in addition to the designation Dorothy Jay complained of, there appears on the labels of the defendant's toilet preparations the unobjectionable name Happy Hours.

It is conceded that the packages are different, particularly in the color scheme and design features of the labels, but such differences do not help the prospective purchasers of the plaintiff's products — " next year's customers " — because they do not usually know the trade dress of plaintiff's packages. Plaintiff's advertisements do not feature the color scheme or design features, save in rare instances. They do, however, always feature the trade-mark Dorothy Gray and the line is known as the Dorothy Gray line. Plaintiff's products are recommended by users to their friends by what is known as " word-of-mouth " advertising, and here again the name is the important means of identification.

As for the name Happy Hours on the defendant's labels, defendant's window sign and catalogue make it clear that the line is called by the defendant the " Dorothy Jay line " and not the " Happy Hours line," as shown by such statements as: " Famous ' Dorothy Jay ' Line of Cosmetics." This practice indicates by what name the defendant wants to have the goods sold to the public. The mere fact that a non-offending name has been added to the deceptive one does not relieve the situation. The contention that the deceptive potentialities of the name Dorothy Jay are neutralized by the factors referred to, flies in the face of common experience and is not advanced in good faith.

" It is not necessary to show instances of actual confusion in the trade to establish plaintiff's right to relief in a cause of this kind, for potentiality of confusion is sufficient in causes of unfair competi-

tion." (*Industrial Rayon Corp.* v. *Dutchess Underwear Corp.*, 17 Fed. Supp. 783, 785, per WOOLSEY, J.; *Helmet Co.* v. *Wm. Wrigley, Jr., Co.*, 245 Fed. 824, 829. See, also, *Bass, Ratcliff & Gretton* v. *Feigenspan*, 96 Fed. 206; *Walter Baker & Co., Ltd.*, v. *Puritan Pure Food Co.*, 139 id. 680; *Smith & Wesson, Inc.*, v. *Galef*, 292 id. 314.)

The defendant's contention that it has a right to the use of the designation Dorothy Jay because that name is a variation or modification of the name of the defendant's president David Jacoby is untenable. (*Maison Prunier* v. *Prunier's Restaurant & Cafe, Inc.*, 159 Misc. 551.) This claim is a hollow pretense. The name Dorothy Jay was adopted in bad faith. Even the use of one's own family name will be enjoined if improper use is made thereof. (*Westphal* v. *Westphal's World's Best Corp.*, 216 App. Div. 53; affd., 243 N. Y. 639. See, also, *Oakite Products, Inc.*, v. *Boritz*, 161 Misc. 807; *Macy & Co.* v. *Macys, Inc.*, 39 F. [2d] 186.)

A trade-mark or trade name is a valuable and sensitive property right which the courts will not permit to be obstructed or diluted by any colorable imitation. (*Bourjois* v. *Katzel*, 260 U. S. 689; *Northam Warren Corp.* v. *Universal Cosmetic Co.*, 18 F. [2d] 774; *Lambert Pharmacal Co.* v. *Bolton Chemical Corp.*, 219 Fed. 325.)

In *Maison Prunier* v. *Prunier's Restaurant & Cafe, Inc.* (159 Misc. 551, 554), this court said: " The courts have frowned upon cases where the appropriation of the name or mark of another was intentional or in bad faith, and especially where such appropriation was accompanied by acts calculated to deceive or to defraud the public, and to convey the impression that the business of the appropriator was either the same business of the originator of the name or mark or identified with it in interest. ' " There is no part of the law which is more plastic than unfair competition, and what was not reckoned an actionable wrong 25 years ago may have become such today." " There is no fetish in the word ' competition.' " " The invocation of equity rests more vitally upon the unfairness." " Many earlier dicta, probably some earlier decisions, are not now safe guides." These vigorous judicial expressions of impatience with the old theories of trademark protection are indicative of a desire to keep abreast of and to serve the needs of modern business. They reflect a consciousness of the need for breadth and liberality in coping with the progressive ingenuity of commercial depravity. But forward strides in trademark protection are being attained by appeals to " good conscience " and " judicial sensibilities " rather than to strictly legal principles derived from a critical analysis of the real tort involved. (Schechter The Rational Basis of Trademark Protection, 40 Harv. Law Rev. 813.) "

Let it be said in language clear and unmistakable that a court of equity will not tolerate the unfair competition and unethical business

conduct practiced in this case. It will lend its aid promptly, effectively and with a minimum of expense to an injured party to put an end to such trade methods. It will strip from such practices the veil of pretense so often astutely thrown around them and expose them for the shabby frauds they really are. Equity will frown upon cleverness and adroitness in resorting to unfair trade methods. It will not be misled by " smart " practices or allow itself to be imposed upon by subtle and tenuous distinctions plausible on the surface but for the most part fictitious and inconsequential in essence.

The defendants are deliberately and wrongfully simulating the trade name of the plaintiff. The only purpose for which this is being done is to mislead the public and to appropriate unto itself some measure of the good will built up by the plaintiff as the result of years of effort and large expenditure of moneys. An injunction will issue to prevent the defendant from continuing this wrong. It may have ten days in which to change to some suitable name for this line of products.

Bond is fixed in the sum of $250.

Settle order on one day's notice.