80   21
82   560
80   21
88   340

GESSLER, Respondent, vs. GRIEB, Appellant.

*May 6 — June 3, 1891.*

*Trade-mark: Infringement:. Imitation of packages: Injunction.*

The plaintiff prepared and sold medicine in boxes labeled "Gessler's Magic Headache Wafers: A positive cure for headache and neuralgia," followed by directions for taking, and the words "Manf'd by Max Gessler, manuf'g chemist, Milwaukee, Wisconsin. Price 35 cents. For sale at all drug stores." His registered trade-mark was "Magic Headache." The defendant, a druggist in Milwaukee, sold a medicine in similar boxes, labeled "Brown's Alpha Headache Wafers" (or "W. J. Brown's Alpha Wafers"): "A positive cure for headache and neuralgia," with directions similar to those.

Gessler vs. Grieb.

on plaintiff's labels, and the words "Manufactured at Brown's Pharmacy, Marquette, Michigan. Price 35 cts. For sale at all drug stores." The wrapper of the plaintiff's boxes contained, in blue and white, the words "Gessler's Magic Headache Wafers. Manufactured only by Max Gessler, Milwaukee, Wis.;" while those of the boxes sold by defendant contained, in red and white, the words "Alpha Wafers for Headache and Neuralgia. Manufactured only at Brown's Pharmacy, Marquette, Mich." *Held:*

(1) There was no infringement of the plaintiff's trade-mark. He had no exclusive right to the use of the words "Headache Wafers" as a trade-mark.

(2) The packages used by the defendant were not such an imitation of the plaintiff's as would entitle the plaintiff to an injunction against such use.

APPEAL from the Circuit Court for *Milwaukee* County. It appears from the record that the plaintiff is a druggist in Milwaukee, and that since April, 1888, he has manufactured and sold a medicine for headache, which he put up in small boxes, each of which contained a label of black ink on white paper, in these words: "Gessler's Magic Headache Wafers; a positive cure for headache and neuralgia. Never fail if taken as directed. Directions: To prepare the wafer, put it into a glass of water; leave there until it is perfectly soft (about $\frac{1}{2}$ to 1 minute), place it in the mouth when soft, and swallow with a drink of water; repeat in about an hour if necessary. Man'fd by Max Gessler, manuf'g chemist, Milwaukee, Wis. Price 35 cents. For sale at all drug stores." Around each of said boxes was a wrapper containing the following words: On one side, "Gessler's Magic Headache Wafers;" on another side, "Beware of imitations. These wafers are a guaranteed cure for sick and nervous headache and neuralgia. They are indorsed by physicians, and sold at drug stores everywhere. Price 35c. a box;" and on another side, "Trade-mark registered U. S. Patent Office, Sept. 25, 1888. Manufactured only by Max Gessler, Milwaukee, Wis. General depots,— London, New York, Chicago, Milwaukee, St. Paul.

Will be sent prepaid upon receipt of 35 cents, if your druggist does not keep them."

It also appears that February 13, 1890, and for some time prior thereto, the defendant was a druggist in Milwaukee, and engaged in selling a remedy for headache, put up in boxes about the same size and shape of the plaintiff's, containing on the outside this label: "W. J. Brown's Alpha Wafers; a guaranteed cure for headache and neuralgia. Never fail if taken as directed. Directions: To prepare the wafer, put it into a glass of water; leave there until it is perfectly soft, about ½ to 1 minute; place it in the mouth when soft, and swallow with a drink of water. Repeat in about an hour if necessary. Manufactured at Brown's Pharmacy, Marquette, Michigan. Price, 35 cts. For sale at all drug stores." Some of the boxes so sold by the defendant contained, instead of the words "W. J. Brown's," simply the word "Brown's," and instead of the words "a guaranteed cure for headache and neuralgia," the words, "a positive cure for headache and neuralgia," but were otherwise the same, except that they were in black ink on white paper, whereas the others were in red ink on white paper. Around each of said boxes so sold by the defendant was a wrapper, and upon one side, in white ink on red paper, were the words, "Alpha Wafers for Headache and Neuralgia;" upon another side, in red ink on white paper, were the words, "Alpha Wafers are purely vegetable, perfectly harmless, pleasant to take, and are sold on a guarantee. They are indorsed by physicians and sold at drug stores everywhere. Price 35c. a box. Copyright applied for;" and upon another side, in red ink on white paper, were the words, "Manufactured only at Brown's Pharmacy, Marquette, Mich. Will be sent prepaid upon receipt of 35c. if your druggist does not keep them. General depots,— New York, Chicago, Marquette, St. Paul, Detroit."

Upon an affidavit of the plaintiff, and an undertaking in

the action, a preliminary injunction was issued by a court commissioner against the defendant's further sale of such medicine, February 12, 1890. March 6, 1890, the defendant, upon affidavit, obtained from said commissioner an order upon the plaintiff to show cause before the circuit court for Milwaukee county, on a day named, why said preliminary injunction should not be set aside and vacated, which order and affidavits were served on the plaintiff's attorneys. Upon the hearing thereof, the plaintiff presented and filed his complaint, alleging the facts stated, and in effect alleging that the articles sold by the defendant were imitations of those manufactured and sold by the plaintiff, and calculated to deceive the purchasers and customers of the plaintiff's articles, and asked that the defendant be restrained from preparing, putting up, selling, or offering for sale said imitation, or any article bearing the name of "Headache Wafers," or any imitation of said name, or bearing said false trade-mark, or any imitation of the label or trade-mark of the plaintiff. Upon the hearing of that motion, it was ordered that the same be and it was thereby denied, and the temporary injunction granted by said commissioner was thereby continued in full force and effect. From that order the defendant appeals.

For the appellant there was a brief by *Bloodgood, Bloodgood & Kemper*, and oral argument by *J. B. Kemper*.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. H. Bottum*. They cited *Woodward v. Lazar*, 21 Cal. 448; Rapalje & L. Law Dict. "Trade-mark;" *Landreth v. Landreth*, 22 Fed. Rep. 41; *Stone v. Carlan*, Coxe's Am. Trade-mark Cases, 115; *Amoskeag Mfg. Co. v. Spear*, id. 88; *Williams v. Johnson*, id. 214; R. S. of U. S. sec. 4945.

Cassoday, J. "It seems to be the office of a trade-mark to point out the true source, origin or ownership of the

Gessler vs. Grieb.

goods to which the mark is applied, or to point out and designate a dealer's place of business, distinguishing it from the business locality of other dealers." *Marshall v. Pinkham*, 52 Wis. 578, 38 Am. Rep. 758. Such trade-mark usually includes the name of the manufacturer or dealer, as the best designation of such source, origin, ownership, or place of business. *Howard v. Park*, 21 Am. Law Reg. 644, and note. Sometimes, however, it consists of some novel device, arbitrary character, or fancy word, applied without special meaning, and which by use and reputation comes to serve the same purpose. *In re Trade-Mark "Alpine,"* 29 Ch. Div. 877; *In re James's Trade-Mark (James v. Soulby)*, 33 Ch. Div. 392; *Jay v. Ladler*, 40 Ch. Div. 649; *In re Australian Wine Importers*, 41 Ch. Div. 278; *American S. L. B. Co. v. Anthony*, 15 R. I. 338, 36 Am. Law Reg. 173; *Selchow v. Baker*, 93 N. Y. 59, 45 Am. Rep. 169.

In the case at bar the plaintiff appears to have rightfully used a label upon a box, and a wrapper on the same, upon which were the words, " Gessler's Magic Headache Wafers, manufactured by Max Gessler, manufacturing chemist, Milwaukee, Wis.," as designating the medicine, prepared and sold by him at his place of business in Milwaukee, as " a positive cure for headache and neuralgia." Such or some other designation is undoubtedly essential to protect and increase his sales of such medicine, which is said to be meritorious. For that purpose courts may protect him against infringement, and the public against deception, to his damage. But it is only *his* trade and *his* business which are thus to be protected by *his* trade-mark. It gave him no monopoly of the headache business. He had no patent upon the mixture or preparation constituting his medicine. There is no claim that the defendant is precluded from manufacturing or selling such medicine by reason of any contract or trust relationship with the plaintiff. These things being so, the plaintiff had no exclusive right to such

mixture, preparation, or sale. *Chadwick v. Covell*, 151 Mass. 190. The defendant, or any other person, therefore, was at liberty to manufacture or sell, as his own, a similar, or even the same, mixture or preparation as a cure for headache, provided he did so in a manner not calculated to mislead incautious persons into the belief that they were buying the medicine manufactured and sold by the plaintiff or some one else. *Ibid.* See, also, *Singer Mfg. Co. v. Loog*, L. R. 8 App. Cas. 15.

The medicine sold by the defendant as a "cure for headache and neuralgia" was put up in boxes similar to those used by the plaintiff, and purported to be "manufactured at Brown's Pharmacy, Marquette, Mich." Upon each box there was a label containing the words, "W. J. Brown's Alpha Wafers," or "Brown's Alpha Headache Wafers;" and the wrapper thereon contained the words, "Alpha Wafers for headache and neuralgia, manufactured only at Brown's Pharmacy, Marquette, Mich." There is no claim that the medicine sold by the defendant was not, in fact, manufactured by Brown in Michigan, as thus stated. As indicated, Brown had the legal right to manufacture such medicine, and sell or authorize the sale of it, as his own, in a manner not calculated to mislead incautious persons. He had the same right to build up a trade for the medicine so manufactured by him, through the agency of the defendant, and have the same protected by his trade-mark, as the plaintiff had. *Brown Chemical Co. v. Myer*, 31 Fed. Rep. 453. There is no claim that the defendant ever used upon any of his boxes, or in any of his labels or wrappers, the words, "Gessler's Magic," or either of those words, in connection with other words or alone, or that he ever in any way indicated that the medicine so sold by him was manufactured by the plaintiff, or in Wisconsin, or by any other person than Brown, at Marquette, Mich. It is therefore very manifest that the defendant never infringed the plaintiff's trade-

Gessler vs. Grieb.

mark, unless he did so by the use of the word "Wafers," or the words, "Headache Wafers," or the words, "a guaranteed cure for headache and neuralgia," or "a positive cure for headache and neuralgia."

It appears that the plaintiff registered as his trade-mark the words "Magic Headache," but he neither has nor could have any exclusive right to those words, in a case like this, by reason of such registration, nor does his counsel claim any. *Trade-Mark Cases*, 100 U. S. 82. Besides, as stated, the defendant has never used the word "Magic" at all; and such registration, if valid, would not give the plaintiff any right to the word "Headache" alone, or in some other connection. *Corbin v. Gould*, 133 U. S. 308. True, the directions on the label used by the defendant are substantially the same as the directions on the plaintiff's label. But the plaintiff makes no claim to any copyright upon such directions; and it is not the office of a trade-mark to "authorize a monopoly upon fragments of the language, nor the exclusive appropriation of words in common use, descriptive of common objects and qualities. It has often been decided that words which were merely descriptive of the kind, nature, style, character, or quality of the goods or articles sold cannot be exclusively appropriated and protected as a trade-mark." *Marshall v. Pinkham*, 52 Wis. 578. See, also, *In re Anderson's Trade-Mark*, 26 Ch. Div. 409; *Street v. Union Bank*, 30 Ch. Div. 156; *In re James' Trade-Mark (James v. Parry)*, 31 Ch. Div. 340; *Manufacturing Co. v. Trainer*, 101 U. S. 51; *Goodyear Co. v. Goodyear Rubber Co.* 128 U. S. 598.

We must hold that the words "Headache Wafers," as used by the plaintiff, whether together or separately, are each in common use, descriptive of common objects and qualities, and hence he has no exclusive right to the same as a trade-mark; and consequently there has been no infringement of the plaintiff's trade-mark by the defendant.

Gessler vs. Grieb.

The learned counsel for the plaintiff contends, however, that, assuming that no specific trade-mark had been infringed, yet that the general similarity in appearance between the wafers, boxes, labels and wrappers used by the defendant and those used by the plaintiff was such as to mislead customers, exercising ordinary caution, into purchasing "W. J. Brown's Alpha Wafers," or "Brown's Alpha Headache Wafers," as and for "Gessler's Magic Headache Wafers," manufactured and sold by the plaintiff. Undoubtedly, where the similarity is such as is likely to thus deceive the public to the injury of a private dealer, an injunction may be granted. *McLean v. Fleming*, 96 U. S. 245; *Carson v. Ury*, 39 Fed. Rep. 777; *Frost v. Rindskopf*, 42 Fed. Rep. 408; *Jay v. Ladler*, 40 Ch. Div. 649; *In re Dunn's Trade-Mark*, 41 Ch. Div. 439. But where, as here, there is no such substantial similarity, and where there is nothing indicating that the defendant is selling his goods as and for the goods manufactured or sold by the plaintiff, no injunction should be granted. *Liggett & M. Tobacco Co. v. Finzer*, 128 U. S. 182; *Goodyear Co. v. Goodyear Rubber Co.* 128 U. S. 598; *Corbin v. Gould*, 133 U. S. 308; *Philadelphia N. M. Co. v. Rouss*, 40 Fed. Rep. 585; *Fleischmann v. Starkey*, 25 Fed. Rep. 127; *Brown Chemical Co. v. Myer*, 31 Fed. Rep. 453; *Singer Mfg. Co. v. Loog*, L. R. 8 App. Cas. 15; *In re Anderson's Trade-Mark*, 26 Ch. Div. 409; *Street v. Union Bank*, 30 Ch. Div. 156; *In re James' Trade-Mark (James v. Parry)*, 31 Ch. Div. 340.

After a careful consideration we are constrained to hold that the plaintiff made no showing entitling him to an injunction.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded with direction to dissolve the injunction, and for further proceedings according to law.