STERLING REMEDY CO. v. EUREKA CHEMICAL & MANUF'G CO.

(Circuit Court, W. D. Wisconsin. November 25, 1895.)

TRADE-MARKS—UNFAIR COMPETITION.

 Plaintiff manufactured a remedy for the tobacco habit, to which it gave the name "No-To-Bac." The remedy was prepared in the form of tablets, five-eighths of an inch in diameter, weighing 28 to the ounce, of a light gray color, odorless, and having the word "No-To-Bac" in raised letters on the surface. It was put up in tin boxes, of dark red color, bearing the word "No-To-Bac" and plaintiff's name and address, conspicuously printed in black, with a description of its alleged qualities and effects, and directions for use, of which the first was an instruction to discontinue the use of tobacco. Defendant manufactured a remedy for the same habit, to which it gave the name "Baco-Curo," and which was also prepared in the form of tablets, but less than one-half inch in diameter, weighing 41 to the ounce, of a dark brown color, having a strong odor of licorice, and with a smooth surface. Defendant's remedy was put up in tin boxes, of size and shape similar to plaintiff's, but nearly white in color, having the word "Baco-Curo" and defendant's name and address conspicuously printed in green, with a description of its alleged qualities and effects, generally similar to that of plaintiff's remedy, and directions for use, of which the first was an instruction not to discontinue the use of tobacco, followed by a warning against remedies which required the user to discontinue such use of his own free will. Held, that defendant's methods of putting up and advertising his goods indicated no intention to deceive the public into buying its remedy as the plaintiff's, and did not constitute unfair competition with plaintiff.

Tarrant & Kronsage and T. A. Polleys, for complainant.
Losey & Woodward, for defendant.

BUNN, District Judge. This is a suit in equity, brought to enjoin the use of a trade-mark and illegal competition in the sale of a certain medicine for the cure of the tobacco habit. The plaintiff is an Illinois corporation, engaged in the business of manufacturing and selling a certain remedy for the cure of the tobacco habit, under the trade-mark designation of "No-To-Bac," with their principal office at Chicago, and their laboratory at Indiana Mineral Springs, Warren county, Ind. The defendant is a Wisconsin corporation, engaged in manufacturing and selling a remedy for the same habit at La Crosse, Wis., under the designation of "Baco-Curo." The complainant seeks to restrain the defendant from using the word "Baco-Curo" in connection with the sale of its medicine intended for the

cure of the tobacco habit, and from using, in connection therewith, certain labels and indicia, claimed to be so similar to those used by the complainant as to induce the public to believe they are buying the complainant's medicine. Allowing that these several designations "No-To-Bac" and "Baco-Curo" can be adopted as trade-marks, and an exclusive property right gained for them (and it would seem that this might be the case, as they are not English words in common use, but somewhat arbitrary, fanciful designations, belonging to no language under the moon), still it can hardly be claimed, and was not upon the hearing seriously claimed, that they are the same, or so similar that one could well be mistaken for the other. But the principal contention was that the defendant, by the adoption of this designation in connection with certain labels, and similar other methods of advertising and dressing out its goods, was guilty of unfair competition in trade, and for that reason should be enjoined; and the question involves primarily a comparison of the two methods of advertising, to ascertain if purchasers of common prudence and understanding would be likely to be deceived into buying the defendant's remedy as and for that of the complainant. There is no direct evidence in the case of any intent to defraud, by representing and selling the goods of the defendant for those of the complainant, and no evidence that any purchaser has ever been deceived into purchasing the defendant's remedy under the belief that he was buying that of the complainant. Notwithstanding this, if the court can see, from a comparison of the style in which the goods were dressed out and offered to the public, that persons of ordinary care and prudence, not wishing to be deceived, would be likely to purchase the defendant's goods as and for the complainant's, the injunction should go, as prayed. Both medicines are made in the form of tablets, round in one dimension, and of a flatish, oval form in the other. There is considerable difference in volume and weight, those of complainant being nearly five-eighths of an inch across the disc, and the defendant's a little less than half an inch, and the relative weights being as 41 to 28; the complainant's running 28 tablets to the ounce, and the defendant's 41. They are also unlike in smell, color, and consistency; the defendant's tablets having a strong smell of licorice, while the complainant's are nearly, or quite, odorless. The complainant's are of a light grayish hue, while defendant's are a dark brown, or nearly black. In consistency the defendant's are somewhat harder, but the most characteristic difference is in this: that while the defendant's are entirely plain and smooth, the complainant's have upon every tablet the designation or trade-mark "No-To-Bac" in large raised letters, extending twice across one side, and constituting part and parcel of the tablet itself. From this distinguishing difference alone, to say nothing of the others, it seems quite clear that, if the medicines were to be sold from an inspection of the tablets alone, no one could well be deceived into purchasing one for the other. But these several remedies for the tobacco habit were, no doubt, commonly sold from an inspection of the boxes in which they are put up, and the

printed labels upon them, the boxes themselves being sealed by a separate label. The boxes are alike in shape and manufacture. They are manufactured in Chicago, not for the parties to this suit, but for general sale and use. They are made of tin, like a tobacco box, are of oblong shape, being $3\frac{3}{4}$ inches long, $2\frac{1}{2}$ inches in width, and five-eighths of an inch in thickness, with oval sides and rounded corners, as though intended to be carried in the pocket, like any ordinary tobacco box. The colors are in marked contrast, and very distinguishable; the complainant's boxes being enameled, of a dark brownish red color, while the defendant's are white, or nearly so. The labels are printed in type of quite different form and color: The color of complainant's printing is black upon a dark red ground, while the defendant's is green upon a white ground. On the top side of complainant's boxes is printed the following, in different forms and sizes of letters:

"No-To-Bac. Trade-mark registered. Is a positive and permanent cure for the tobacco habit in every form. It is nature's own remedy. It is entirely harmless, being of vegetable origin. It will build up, fortify, and rejuvenate the weak and unstrung nerves, and eradicate the poisonous nicotine from the system. It will increase the appetite and digestive power, enrich and purify the blood. From one to three boxes guarantied to cure any case, if used as directed. Price $1.00. Made only by the Sterling Remedy Co., Indiana Mineral Springs, Warren Co., Indiana. Chicago Office 45 & 47 Randolph St."

On the back is the following:

"Directions for the use of No-To-Bac. Cure for the tobacco habit in every form. Immediately discontinue the use of tobacco, and use 7 to 10 tablets a day, by placing them in the mouth, and allowing the tablet to gradually dissolve before swallowing. In this way you get the prolonged action of No-To-Bac upon the secretive glands of the mouth. During treatment the bowels should be kept open. One or two free actions every day will greatly assist the medicine in expelling the nicotine from the system. Continue the use of No-To-Bac until the desire for tobacco, and its effects upon the system, are completely eradicated. Patients writing about their case, and asking advice, etc., must inclose stamp for reply. Address the Sterling Remedy Co., Indiana Mineral Springs, Warren Co., Ind. Chicago Office 45 & 47 Randolph St."

On top of defendant's box is the following:

"Baco-Curo. Trade-mark. A scientific, reliable, and harmless cure for the tobacco habit in every form. It builds up the system, enriches the blood, tones up the stomach, and increases the appetite and digestive power. It cures tobacco dyspepsia, that so many tobacco users suffer with. Makes weak, nervous men strong and vigorous. Good, sound, refreshing sleep, and a decided gain in weight and general health, follows the first few days' use. We guaranty to cure any case with from one to three boxes. Price $1.00. Prepared only at laboratory of Eureka Chemical & Mfg. Co., La Crosse, Wis., U. S. A. Read bottom of box."

On the bottom of the box is the following:

"Don't stop tobacco when you begin taking a cure, and don't be imposed upon by buying a remedy that requires you to do so. Any person can stop short on tobacco, and take a piece of gum or a cough drop in his mouth, every hour or two, as a substitute, and, by keeping the bowels open, to more quickly work the nicotine out of the system, can practically cure himself, as well as by taking some so-called 'cures' that require this mode of treatment.

But it requires a strong will power to stay cured, as you always remember tobacco with a relish, and it will take years to outgrow the desire for it. Baco-Curo does not require you to stop tobacco when you begin the treatment. It will notify you when to stop. Your desire for tobacco will cease, and it causes you to remember it with disgust, not a relish, as other so-called 'cures' do. You don't care for tobacco any more than before you commenced using it. Baco-Curo does not rely upon your own will power to cure you. It does its work unaided, and leaves your system as pure and free from nicotine as the day before you took your first chew or smoke. Baco-Curo is compounded after the formula and prescription of an eminent German physician, who has prescribed it in his private practice since 1872 to hundreds of cases, without a single failure when directions have been followed. This formula is controlled exclusively by us in North and South America. Prepared only at laboratory of Eureka Chemical & Mfg. Co., La Crosse, Wis., U. S. A. Directions inside."

Both complainant's and defendant's boxes are sealed on the edge by a label, on which is printed,—on the complainant's box: "Not genuine, unless countersigned by the Sterling Remedy Co. Offices and Laboratory, Indiana Mineral Springs. Ind., U. S. A."; and on defendant's label the following: "None genuine without Eureka Chemical & Mfg. Co., this signature.".

There is considerable other evidence in regard to the method of displaying the goods in wire frames and show cards, tending to show, not an identity, but a general similarity, in the method of getting the goods before the public; but I think the case may properly be decided upon the evidence as stated. Within the rule laid down by the United States supreme court, and other leading cases, it seems quite apparent that this suit cannot be maintained. See McLean v. Fleming, 96 U. S. 245; Coats v. Thread Co., 149 U. S. 562, 13 Sup. Ct. 966; Fischer v. Blank, 138 N. Y. 244, 33 N. E. 1040; Taendsticksfabriks Aktiebolagat Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904; Siegert v. Abbott (Sup.) 25 N. Y. Supp. 590; Brown v. Seidel, 153 Pa. St. 60, 25 Atl. 1064;. Alff v. Radam (Tex. Sup.) 14 S. W. 164; Radam v. Microbe Destroyer Co., 16 S. W. 990, 81 Tex. 122; Manufacturing Co. v. Rouss, 40 Fed. 585; Gessler v. Grieb, 80 Wis. 21, 48 N. W. 1098.

The rule laid down by the United States supreme court in McLean v. Fleming, supra, is as follows:

"Equity gives relief in such a case upon the ground that one man is not allowed to offer his goods for sale, representing them to be the manufacture of another trader in the same commodity. Supposing the latter has obtained celebrity in his manufacture, he is entitled to all the advantages of that celebrity, whether resulting from the greater demand for his goods, or from the higher price the public are willing to give for the article, rather than for the goods of the other manufacturer, whose reputation is not so high as a manufacturer. Where, therefore, a party has been in the habit of stamping his goods with a particular mark or brand, so that the purchasers of his goods having that mark or brand know them to be of his manufacture, no other manufacturer has a right to adopt the same stamp, because, by doing so, he would be substantially representing the goods to be the manufacture of the person who first adopted the stamp, and so would or might be depriving him of the profit he might make by the sale of the goods which the purchaser intended to buy. Seixo v. Provezende, 1 Ch. App. 195. What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to

say that no trader can adopt a trade-mark so resembling that of another trader as that ordinary purchasers, buying with ordinary caution, are likely to be misled."

In Coats v. Thread Co., 149 U. S. 567, 13 Sup. Ct. 966, the court lays down a similar rule, and in respect to the case then under consideration, though there was held to be no infringement, the court say:

"The differences are less conspicuous than the general resemblance between the two. At the same time, they are such as could not fail to impress themselves upon a person who examined them with a view to ascertain who was the real manufacturer of the thread."

In the case at bar, although there is a similarity in the general style of advertising, the differences, instead of being less, are more, conspicuous and distinguishing than the general resemblances. Indeed, the resemblances are of a very general character, while the distinguishing differences are quite marked, insomuch that it sems quite evident to me that no person of ordinary sense or prudence could well be deceived. Indeed, there seems to be no idea of attempting, on defendant's part, to put its goods off as and for the complainant's manufacture. The defendant puts its own peculiar designation of "Baco-Curo" upon its label in conspicuous green letters upon a white ground, while complainant's "No-To-Bac" is placed upon its label in equally conspicuous black letters upon a red ground. Each places upon the label which seals the box, in plain and conspicuous letters, the name and place of the manufacturer. The complainant's label admonishes the purchaser that he must immediately discontinue the use of tobacco. The defendant's label, in a large and conspicuous heading, says: "Don't stop tobacco when you begin taking a cure, and don't be imposed upon by buying a remedy that requires you to do so." There are many other distinguishing differences not so marked. Indeed, I think all the circumstances go to show that the defendant's was a rival remedy for the same habit; that the competition was lawful, and that there was no intention of deceiving the public into purchasing the defendant's goods as and for the complainant's; and that, while the general method and style of advertising was similar, there was nothing in it that was likely to deceive the public.

The remarks of the court in the late case of Brown v. Seidel, 153 Pa. St. 72, 25 Atl. 1064, seem quite applicable to the case at bar:

"There is no such similarity in the trade-marks used by the respective parties to this controversy as to justify the conclusion that the one is intended as an imitation of the other. This is so palpable upon inspection, that any discussion of the subject is unnecessary. In fact the complaint of the plaintiffs is not so much that the defendants have pirated their trade-mark, as that they have put up their goods in a form and style of package which resembled those of plaintiffs. The respective parties are engaged in the manufacture and sale of an article of stove polish, and there certainly is a resemblance, in the size of the packages, and in the manner in which they are put up, between those of the defendants and the plaintiffs. They both used tin foil as wrappers for the stove polish, over which is placed a paper wrapper of similar colors. The packages, as thus put up, might, perhaps, induce an ignorant or careless person to mistake the one for the other, provided he

made no examination whatever. The mere possibility of a mistake, however, is not sufficient. As was said in Heinz v. Lutz, 146 Pa. St. 592, 23 Atl. 314: 'It is not enough that there may be a possibility of deception. The offending label must be such that it is likely to deceive persons of ordinary intelligence.' "

There will be a decree dismissing the complainant's bill, with costs.