### BRENNAN et al. v. EMERY–BIRD–THAYER DRY–GOODS CO.

(Circuit Court of Appeals, Eighth Circuit. April 12, 1901.)

No. 1,469.

TRADE-MARKS—DESCRIPTIVE WORDS—"STEEL SHOD" SHOES.

The words "Steel Shod," when applied to boots or shoes whose soles are studded with steel nails to render them more durable, are essentially descriptive, and cannot be exclusively appropriated by one manufacturer as a trade-mark.[1]

Appeal from the Circuit Court of the United States for the Western District of Missouri.
For opinion below, see 99 Fed. 971.

[1] What names subject to exclusive use, see note to Kathreimer's Malzkaffee Fabriken Mit Beschraenkter Haftung v. Pastor Kneipp Medicine Co., 27 C. C. A. 357.

Robert Bach McMaster (Clarence L. Palmer, on the brief), for appellants.

John L. Peak, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. On March 6, 1897, Hubert Brennan and Edward L. White, the appellants, exhibited their bill of complaint against the Emery-Bird-Thayer Dry-Goods Company, the appellee, charging the latter with the infringement of an alleged trademark which the complainants had for some years been in the habit of stamping or branding on the soles of a certain kind of shoes of their manufacture. The alleged trade-mark consisted of the words "Steel Shod" printed on the face of a figure representing an anvil. The trade-mark in question was registered in the United States patent office on June 16, 1891, and had been used by the complainants to a considerable extent after that date. The application which they filed for the purpose of securing a registration in the patent office contains the following statement or declaration:

"The trade-mark consists in the arbitrarily selected word symbol 'Steel Shod.' This has generally been arranged as shown in the accompanying facsimile, in which it appears in connection with the representation of an anvil. The latter feature may, however, be omitted without altering the character of our trade-mark, the essential feature of which is the arbitrary word symbol 'Steel Shod.' This trade-mark has been used continuously by us in our business since about April 1, 1891."

The defendants, by their answer, disclaimed any intention of violating the complainants' alleged trade-mark, and in that behalf the answer contained, in substance, the following averments: That prior to December, 1896, the firm of Bullene, Moore, Emery & Co., the predecessors of the defendant company, had handled a small quantity of shoes, made by the complainants, which bore the impress of the above-described trade-mark; that there was nothing on the shoes so handled by said firm to indicate that the complainants claimed it as a trade-mark, or that it was registered; that when the defendant was organized its officers were ignorant of the fact that the words "Steel Shod" had been registered as a trade-mark, or that the complainants claimed an exclusive property in the words, but supposed, on the contrary, that said words were descriptive of the character and quality of the shoes to which the words were affixed, and that any one was entitled to make use of the same if they aptly described the soles of the shoes to which they were applied; that, acting under such belief, the defendant company, after it was organized as a corporation, had had certain shoes made for its trade, on the soles of which the words and symbol aforesaid were stamped to indicate that they were in fact steel shod; that, in connection with said words, and underneath the same, it caused to be printed the following initials: "E. B. T. & Co."; that in December, 1896, it was informed for the first time of the claim which was made by the complainants with reference to its proprietary interest in the words "Steel Shod"; that thereafter it ceased to make use of such words on shoes which were manufactured for its trade,

108 F.—40

but that it did have in stock when the bill was filed about two dozen pairs of shoes bearing the aforesaid stamp, which had been made for it before it received the aforesaid notice of the complainants' claim; and that it had obliterated said stamp on all of such shoes, and disclaimed any intention of thereafter making use of the alleged trade-mark.

Turning to the evidence in the case, it is to be observed that it fails to show that either the firm of Bullene, Moore, Emery & Co. or that the defendant corporation after it was organized had any knowledge that the complainants claimed a proprietary interest in the words "Steel Shod," until some time in December, 1896, or about three months before the present action was instituted. The words last aforesaid, and the accompanying representation of an anvil as branded on the shoes, which were purchased from the company by the last-named firm, did not show that the words in question were registered as a trade-mark, and there is no evidence in this record, so far as we can discover, that knowledge of the fact that they were so registered and claimed was acquired from any other source. It must accordingly be assumed to be true, as stated in the answer, which is duly verified, that in making use of the words "Steel Shod" in the manner disclosed by the answer, upon shoes of its own manufacture, the defendant company acted in ignorance of the complainants' alleged exclusive right to those words, and with no intention of appropriating to its own use another's trade-mark. The testimony does show, however, that, when the words "Steel Shod" were branded by the defendant's direction on shoes that were manufactured for its trade, they were so used upon shoes whose soles were quilted with steel wire, and whose heels were studded with steel nails or steel posts, so that the words "Steel Shod" aptly described the kind or the quality of the shoes. It is also noteworthy that the shoes manufactured by the complainants to which they now apply the alleged trade-mark have soles of the same kind,—that is to say, soles that are quilted or thickly studded with nails,—although it is claimed by them that originally they used the words "Steel Shod" in connection with shoes that only had steel nails or posts in the heels, and that, as thus applied, the words indicated a kind of shoe whose durability they would warrant. Since December, 1896, when the defendant company first received notice of the complainants' claim, it has abandoned the use of the words "Steel Shod" on shoes, which it has manufactured for its trade; but since this action was instituted it has substituted the words "Steel Clad" on shoes sold by it whose soles are quilted with wire nails for the purpose of rendering them more durable.

Now, in view of the foregoing facts, and in view of the further fact that the bill counts exclusively upon an alleged wrongful appropriation of the words "Steel Shod," which are said to have become by long-continued use, as well as by registration, a technical trade-mark, the only question in the case is whether these words, which, as the complainants say, constitute the "essential feature" of their trade-mark, and may be used without the figure of an anvil, can be exclusively appropriated by any manufacturer of shoes or

footwear so as to become a trade-mark when used in connection with the manufacture and sale of footwear. We feel constrained to hold that this question must be answered in the negative. It is one of the fundamental rules of the law of trade-mark that words, and even symbols, which are descriptive of the kind, quality, nature, properties, or place of manufacture of an article to which the words are applied cannot be appropriated as a trade-mark, as respects that article, because other persons who manufacture or produce the same article may have occasion to make use of the same words or symbols to describe their own products, and they are entitled to the free use of apt language and symbols for that purpose. No person or corporation can acquire, even by long-continued use, a monopoly of words or signs which are essentially descriptive of the article to which they are applied. If a manufacturer desires to obtain an exclusive right to the use of words or symbols to indicate the origin of his goods, and to identify them, he must choose words or symbols which, as respects the article to which he applies them, are arbitrary or fanciful in the sense that they do not describe its kind, quality, properties, or the place where it is manufactured. To sustain these familiar propositions it is only necessary to refer to a few cases. Canal Co. v. Clark, 13 Wall. 311, 321, 20 L. Ed. 581; Mill Co. v. Alcorn, 150 U. S. 460, 464, 14 Sup. Ct. 151, 37 L. Ed. 1144; Chemical Co. v. Meyer, 139 U. S. 540, 546, 11 Sup. Ct. 625, 35 L. Ed. 247; Merriam v. Clothing Co. (C. C.) 47 Fed. 411, 414; Fetridge v. Wells, 13 How. Prac. 387. The words "Steel Shod" are essentially descriptive when applied to boots or shoes whose soles are studded with steel nails to render them more durable. Indeed, we can scarcely conceive of language which is more apt to define the species of shoe last mentioned, or that would be more naturally adopted by a manufacturer for that purpose. The words in question, when applied to shoes whose soles are quilted with nails, are neither arbitrary nor figurative; and within the doctrine above stated no manufacturer is entitled to appropriate them as his exclusive property for the purpose of describing shoes which are thus made. If the law permitted words which are essentially descriptive of kind, quality, or properties to be appropriated by a merchant or manufacturer to advance the sale of his own goods, the English language would be speedily impoverished in these days when competition in all lines of trade and manufacture is both selfish and keen. It has accordingly been decided that the words "Headache Wafers," as applied to a drug put up in the form of a wafer for the cure of headache, cannot be appropriated as a trade-mark (Gessler v. Grieb, 80 Wis. 21, 27, 48 N. W. 1098); that the word "Snowflake," as applied to bread or crackers, is descriptive of whiteness, lightness, and purity, and as so applied cannot be appropriated as a trade-mark (Larrabee & Co. v. Lewis, 67 Ga. 561, 44 Am. Rep. 735); that the words "Rye and Rock," as applied to a mixture of liquid rock candy and whisky, cannot be appropriated as a trade-mark (Van Beil v. Prescott, 82 N. Y. 630); that the words "Black Package Tea," as applied to tea put up in black packages, cannot be appropriated as a trade-mark (Fischer v. Blank, 138 N. Y. 244, 249, 33

N. E. 1040); and that the words "Iron Bitters," as applied to a solution of iron designed to be used as a tonic, cannot be so appropriated (Chemical Co. v. Meyer, 139 ᵀ. S. 540, 546, 11 Sup. Ct. 625, 35 L. Ed. 247). In view of these decisions, and many others of an analogous character which might doubtless be found, and for the reasons heretofore stated, we conclude that the complainants have no exclusive property in the words "Steel Shod," as applied to shoes whose soles are quilted with steel nails, and that the effort on their part to appropriate them must accordingly fail, and their alleged trade-mark be held to be invalid. The decree of the lower court dismissing the bill of complaint is accordingly affirmed.